UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

IN RE:                                              BCN#: 21-16504
GREGORY J. CASAMENTO                                 Chapter: 13
     Debtor
_____

BANK OF AMERICA, N.A.
or present noteholder,
     Movant/Secured Creditor,              MOTION FOR ORDER GRANTING
v.                                                  RELIEF FROM AUTOMATIC STAY AND
GREGORY J. CASAMENTO                                 CO-DEBTOR STAY
     Debtor
JENNIFER LEE CASAMENTO
     Co-Debtor
and
TIMOTHY P. BRANIGAN
     Trustee
     Respondents


COMES NOW, BANK OF AMERICA, N.A., its assignee and/or successors in interest, (Movant herein), by Counsel, and alleges as follows:

1.     The above-named Debtor filed a Chapter 13 Petition in Bankruptcy with this Court on October 15, 2021.

2.     The bankruptcy court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 362 and 1301; Federal Rule of Bankruptcy Procedure 9014. This matter is a core proceeding.

3.     The Movant is the current payee of a promissory note secured by a deed of trust upon a parcel of real property with the address of 14218 Oxford Drive, Laurel, MD 20707 and more particularly described in the Deed of Trust dated October 24, 2003 and recorded at Liber 18486 at Folio 283, among the land records of the County of Prince George's as:

THE LAND HEREINAFTER REFERRED TO IS SITUATED IN THE CITY OF LAUREL, COUNTY OF PRINCE GEORGE'S, STATE OF MD, AND IS DESCRIBED                AS              FOLLOWS:

LOT 180 IN THE SUBDIVISION KNOWN AS "PLAT 1-SECTION 2, LAUREL LAKES" AS PER PLAT OF SAID SUBDIVISION RECORDED IN PLAT BOOK NLP 123 AT PLAT 1, AMONG THE LAND RECORDS OF PRINCE GEORGE'S COUNTY, MARYLAND

Copies of the Deed of Trust and Note are attached hereto and made a part hereof by reference.

4.      Carrington Mortgage Services, LLC services the loan on the Property referenced in this motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the promissory note. Movant will enforce the promissory note as transferee in possession. Movant is the original mortgagee or beneficiary or the assignee of the Deed of Trust.

5.      All communications sent by Secured Creditor in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtors.

6.      This Movant is informed and believes, and based upon such information and belief, alleges that title to the subject Property is currently vested in the name of the Debtor.

7.      The approximate total debt figure, as of April 19, 2022 is $186,103.30 (not to be relied upon as the payoff amount). It consists of the following:

   a.  Principal Balance:  $131,155.85
   b.  Deferred Principal Balance: $1,098.40
   c.  Interest:  $20,110.74
   d.  Escrow Advance:  $23,016.43
   e.  Accumulated Late Fees:  $112.16
   f.  Accumulated Fees:  $10,609.72

8.    Movant filed a Proof of Claim which provides a detailed statement of the debt owed, a copy of which is a part of the Court's record, and is incorporated herein and made a part of this Motion for Relief.

9.    The Debtor is in default with regard to payments which have become due under the terms of the aforementioned Note and Deed of Trust since the filing of the Chapter 13 Petition.

As of April 19, 2022 the Debtor is due for:

- o  6 post petition monthly payments of $1,228.50 each which were to be paid directly to the Movant;

- o  Suspense: $0.00

10.    The Movant has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed but is prevented by the Automatic Stay from going forward with these proceedings.

11.    This Movant is informed and believes, and based upon such information and belief, alleges that absent this Court's Order allowing this Movant to proceed with the pending foreclosure, Movant's security interest will be significantly jeopardized and/or destroyed.

12.    That Timothy P. Branigan, Trustee, has been appointed by this Court as the Chapter 13 Trustee in this instant Bankruptcy proceeding.

WHEREFORE, the Movant prays for an Order Granting Relief From the Automatic Stay of 11 U.S.C. § 362(a), as well as the "Codebtor stay" of 11 U.S.C. § 1301(a), and for costs of suit and disbursements of this contested matter, including reasonable attorney's fees, and, for such other relief as the court may deem to be proper.

Dated: _____April 26, 2022_____

LOGS LEGAL GROUP LLP
Attorney for Movant


By: _____/s/Randa S Azzam_____
William M. Savage, Esquire
Federal I.D. Bar No. 06335
Malcolm B. Savage, III, Esquire
Federal I.D. Bar No. 20300
Randa Azzam, Esquire
Federal I.D. Bar No. 22474
Gregory N. Britto, Esquire
Federal I.D. Bar No. 22531
Counsel for Movant
LAW OFFICES OF LOGS LEGAL GROUP LLP
10021 Balls Ford Road, Suite 200
Manassas, Virginia 20109
(703) 449-5800 / logsecf@logs.com /  19-280521

## CERTIFICATE OF SERVICE

I hereby certify that on the _____26th___ day of __April_____, _2022___ the following person(s)
were served a copy of the foregoing in the manner described below:

Via CM/ECF Electronic Notice:

James R. Logan                                               Debtor's Attorney
James R. Logan P.A.
2419 Maryland Avenue
Baltimore, MD 21218

Timothy P. Branigan                                          Chapter 13 Trustee
9891 Broken Land Parkway
Suite 301
Columbia, MD 21046

Via First Class Mail, Postage Prepaid:

Gregory J. Casamento                                         Debtor(s)
14218 Oxford Drive
Laurel, MD 20707

Jennifer Lee Casamento                                       Co-Debtor(s)
14218 Oxford Drive
Laurel, MD 20707

                                        /s/Randa S Azzam
                        _____
                        William M. Savage, Esquire
                        Federal I.D. Bar No. 06335
                        Malcolm B. Savage, III, Esquire
                        Federal I.D. Bar No. 20300
                        Randa Azzam, Esquire
                        Federal I.D. Bar No. 22474
                        Gregory N. Britto, Esquire
                        Federal I.D. Bar No. 22531
                        LOGS LEGAL GROUP LLP
                        10021 Balls Ford Road, Suite 200
                        Manassas, Virginia 20109
                        (703) 449-5800
                        logsecf@logs.com       19-280521

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

IN RE:                                          BCN#: 21-16504
GREGORY J. CASAMENTO                             Chapter: 13

_____Debtor_____

BANK OF AMERICA, N.A.
or present noteholder,

       Movant/Secured Creditor,                NOTICE TO CODEBTOR OF MOTION TO
                                                TERMINATE SECTION 1301 STAY

v.

GREGORY J. CASAMENTO
      Debtor


To: Jennifer Lee Casamento, 14218 Oxford Drive, Laurel, MD 20707

     As Codebtor of the above-captioned Debtor, you are hereby notified that the above-captioned Movant has filed a Motion which seeks, <u>inter alia</u>, to terminate the Codebtor Stay imposed under 11 U.S.C. § 1301(a). A copy of the Motion is enclosed herewith.

     The deadline to file a written response is seventeen days from the date of the mailing of the Motion for Relief from Automatic Stay. Should you elect to file a response, a response must be filed within seventeen days from the mailing of the Motion for Relief From Automatic Stay or in the event that the CoDebtor fails to file a response, judgment by default may be entered pursuant to 11 U.S.C. Section 1301(d).

                         BANK OF AMERICA, N.A.
                         and its assignees and/or
                         successors in interest


                          /s/Randa S Azzam
                By: _____
                William M. Savage, Esquire
                Federal I.D. Bar No. 06335
                Malcolm B. Savage, III, Esquire
                Federal I.D. Bar No. 20300
                Randa Azzam, Esquire
                Federal I.D. Bar No. 22474
                Gregory N. Britto, Esquire
                Federal I.D. Bar No. 22531

Counsel for Movant
LAW OFFICES OF LOGS LEGAL GROUP LLP
10021 Balls Ford Road, Suite 200
Manassas, Virginia 20109
(703) 449-5800 / logsecf@logs.com / 19-280521

## CERTIFICATE OF SERVICE

I hereby certify that on the ____26th___ day of ____April_____, ___2022___ the following person(s) were served a copy of the foregoing in the manner described below:

Via CM/ECF Electronic Notice:

James R. Logan                                                     Debtor's Attorney
James R. Logan P.A.
2419 Maryland Avenue
Baltimore, MD 21218

Timothy P. Branigan                                               Chapter 13 Trustee
9891 Broken Land Parkway
Suite 301
Columbia, MD 21046

Via First Class Mail, Postage Prepaid:

Gregory J. Casamento                                              Debtor(s)
14218 Oxford Drive
Laurel, MD 20707

Jennifer Lee Casamento                                            Co-Debtor(s)
14218 Oxford Drive
Laurel, MD 20707

_____/s/Randa S Azzam_____
William M. Savage, Esquire
Federal I.D. Bar No. 06335
Malcolm B. Savage, III, Esquire
Federal I.D. Bar No. 20300
Randa Azzam, Esquire
Federal I.D. Bar No. 22474
Gregory N. Britto, Esquire
Federal I.D. Bar No. 22531
LOGS LEGAL GROUP LLP
10021 Balls Ford Road, Suite 200
Manassas, Virginia 20109
(703) 449-5800
logsecf@logs.com       19-280521

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

IN RE:                                          BCN#: 21-16504
GREGORY J. CASAMENTO                            Chapter: 13
       Debtor
_____

BANK OF AMERICA, N.A.
or present noteholder,
       Movant/Secured Creditor,

v.

GREGORY J. CASAMENTO
       Debtor
JENNIFER LEE CASAMENTO
       Co-Debtor
and
TIMOTHY P. BRANIGAN
       Trustee
       Respondents

ORDER GRANTING BANK OF AMERICA, N.A.
RELIEF FROM AUTOMATIC STAYS AS
TO REAL PROPERTY COMMONLY
KNOWN AS
14218 OXFORD DRIVE, LAUREL, MD 20707

THE COURT having considered the Motion of BANK OF AMERICA, N.A. for Relief

from the Automatic Stay of 11 U.S.C. § 362 (a), as well as from the CoDebtor Stay of 11 U.S.C.

§1301 (a), the lack of opposition thereto, and the record herein;

And it appearing to the Court that the Secured Creditor is entitled to relief from the effect of the automatic stay of 11 U.S.C. § 362(a), pursuant to sub-section (d) thereof, as well as from the CoDebtor stay of 11 U.S.C. § 1301 (a),

IT IS ORDERED that the automatic stays be, and they hereby are, immediately lifted to BANK OF AMERICA, N.A., its assignees and/or successors in interest, so as to allow them to proceed to a foreclosure sale of the subject property commonly known as 14218 Oxford Drive, Laurel, MD 20707 and more particularly described in the Deed of Trust dated October 24, 2003 and recorded at Liber 18486 at Folio 283, among the land records of the County of Prince George's.

Subsequent to such sale, the Secured Creditor may take all lawful actions in accordance with state law, to take possession of the property and pursuant to Local Bankruptcy Rule 4001-3 shall provide a copy of the Report of Sale and all Audits Reports to the Bankruptcy Trustee if there is a surplus over and above the debt owed to the foreclosing noteholder;

IT IS FURTHER ORDERED that the Movant may at its option, offer, provide and enter into any potential forbearance agreement, loan modification, short sale, or other loan workout/loss mitigation agreement.

I ask for this:

_____
William M. Savage, Esquire
Federal I.D. Bar No. 06335
Malcolm B. Savage, III, Esquire
Federal I.D. Bar No. 20300
Randa Azzam, Esquire
Federal I.D. Bar No. 22474
Gregory N. Britto, Esquire
Federal I.D. Bar No. 22531

Counsel for Movant
LAW OFFICES OF LOGS LEGAL GROUP LLP
10021 Balls Ford Road, Suite 200
Manassas, Virginia 20109
(703) 449-5800 / logsecf@logs.com / 19-280521

cc:

James R. Logan                                    Debtor's Attorney
James R. Logan P.A.
2419 Maryland Avenue
Baltimore, MD 21218

Timothy P. Branigan                               Chapter 13 Trustee
9891 Broken Land Parkway
Suite 301
Columbia, MD 21046

Gregory J. Casamento                              Debtor(s)
14218 Oxford Drive
Laurel, MD 20707

Jennifer Lee Casamento                            Co-Debtor(s)
14218 Oxford Drive
Laurel, MD 20707

**END OF ORDER**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

IN RE:                                          BCN#: 21-16504
GREGORY J. CASAMENTO                             Chapter: 13
        Debtor
_____
BANK OF AMERICA, N.A.
or present noteholder,
        Movant/Secured Creditor,
v.
GREGORY J. CASAMENTO
        Debtor
JENNIFER LEE CASAMENTO
        Co-Debtor
and
TIMOTHY P. BRANIGAN
        Trustee
        Respondents


NOTICE OF MOTION FOR RELIEF FROM STAY
AND HEARING THEREON

        BANK OF AMERICA, N.A., and its assignees (Movant herein) by counsel, has filed
papers with the Court seeking relief from the automatic stay of 11 U.S.C. § 362 (a) and 11
U.S.C. § 1301 (a) to enable it to obtain an order granting relief from the automatic stay. Your
rights may be affected. You should read these papers carefully and discuss them with your
lawyer, if you have one in this bankruptcy case. (If you do not have a lawyer, you may wish to
consult one.)

        If you do not want the court to grant the motion for relief from stay, or if you want the
court to consider your views on the motion, then by ____May 10, 2022_____ you or your
lawyer must file a written response with the Clerk of the Bankruptcy Court explaining your
position and mail a copy to:


        LOGS LEGAL GROUP LLP, counsel for BANK OF AMERICA, N.A.
        10021 Balls Ford Road, Suite 200
        Manassas, Virginia 20109


        If you mail rather than deliver, your response to the Clerk of the Bankruptcy Court for
filing, you must mail it early enough so that the Court will receive it by the date stated above.

The hearing is scheduled for ___May 23, 2022_____ at 2:00 PM in Judge Lori S. Simpson's Courtroom, United States Bankruptcy Court, 6500 Cherrywood Lane, Courtroom 3-D, Greenbelt, MD 20770.

IF YOU OR YOUR LAWYER DO NOT TAKE THESE STEPS BY THE DEADLINE, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION AND MAY GRANT OR OTHERWISE DISPOSE OF THE MOTION BEFORE THE SCHEDULED HEARING DATE.

DATE: ____April 26, 2022_____

/s/Randa S Azzam

William M. Savage, Esquire
Federal I.D. Bar No. 06335
Malcolm B. Savage, III, Esquire
Federal I.D. Bar No. 20300
Randa Azzam, Esquire
Federal I.D. Bar No. 22474
Gregory N. Britto, Esquire
Federal I.D. Bar No. 22531
LAW OFFICES OF LOGS LEGAL GROUP LLP
10021 Balls Ford Road, Suite 200
Manassas, Virginia 20109
(703) 449-5800 /logsecf@logs.com
19-280521

**CERTIFICATE OF SERVICE**

I hereby certify that on the _____26th___ day of __April_____, __2022___ the following person(s) were served a copy of the foregoing in the manner described below:

Via CM/ECF Electronic Notice:

James R. Logan                                                    Debtor's Attorney
James R. Logan P.A.
2419 Maryland Avenue
Baltimore, MD 21218

Timothy P. Branigan                                              Chapter 13 Trustee
9891 Broken Land Parkway
Suite 301
Columbia, MD 21046

Via First Class Mail, Postage Prepaid:

Gregory J. Casamento                                             Debtor(s)
14218 Oxford Drive
Laurel, MD 20707

Jennifer Lee Casamento                                           Co-Debtor(s)
14218 Oxford Drive
Laurel, MD 20707

                                        /s/Randa S Azzam
                              _____
                              William M. Savage, Esquire
                              Federal I.D. Bar No. 06335
                              Malcolm B. Savage, III, Esquire
                              Federal I.D. Bar No. 20300
                              Randa Azzam, Esquire
                              Federal I.D. Bar No. 22474
                              Gregory N. Britto, Esquire
                              Federal I.D. Bar No. 22531
                              LOGS LEGAL GROUP LLP
                              10021 Balls Ford Road, Suite 200
                              Manassas, Virginia 20109
                              (703) 449-5800
                              logsecf@logs.com       19-280521

Prepared by: JULIE L. BERENS

**Multistate**                     NOTE

OCTOBER 24, 2003
[Date]

14218 OXFORD DRIVE, LAUREL, MD 20707
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means COUNTRYWIDE HOME LOANS, INC.
and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED FIFTY FIVE THOUSAND THREE HUNDRED TWO and 00/100

Dollars (U.S. $ 155,302.00      ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE & THREE-QUARTERS
percent (    5.750   %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on DECEMBER 01, 2003 . Any principal and interest remaining on the first day of NOVEMBER, 2033 , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 906.30      . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge        ☐ Growing Equity Allonge        ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Multistate Fixed Rate Note - 10/95
Initials: GTC

VMP -1R (0303)        CHL (03/03)(d)

## 6. BORROWER'S FAILURE TO PAY
### (A) Late Charge for Overdue Payments
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of  FOUR                               percent (    4.000  %) of the overdue amount of each payment .

### (B) Default
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.
### (C) Payment of Costs and Expenses
If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS
Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
Without Recourse
Countrywide Home Loans Servicing LP
BY
David A. Spector
Managing Director

PAY TO THE ORDER OF
Countrywide Home Loans Servicing LP
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY
David A. Spector
Managing Director

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)                    _____ (Seal)
GREGORY J. CASAMENTO              -Borrower                                              -Borrower

_____ (Seal)                    _____ (Seal)
                                 -Borrower          PAY TO THE ORDER OF         -Borrower

WITHOUT RECOURSE
BANK OF AMERICA, N.A.
BY   Michele Sjolander
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

2003 DEC -8   A   # 39   1 of 1

CLERK OF THE
CIRCUIT COURT

Return To

Homeland Title & Escrow, LTD
770 Ritchie Hwy., Suite W-8
Severna Park, MD 21146
(410) 544-6700   (410) 544-6702 Fax

[Space Above This Line For Recording Data]

State of Maryland

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on OCTOBER 24, 2003    . The Grantor is
GREGORY J. CASAMENTO, A MARRIED MAN

("Borrower"). The trustee is
R. DOUGLAS JONES
102 W. PENNSYLVANIA AVE, #201, TOWSON, MD 21204
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
COUNTRYWIDE HOME LOANS, INC.
("Lender") is organized and existing under the laws of NEW YORK                     , and has an address of
4500 Park Granada, Calabasas, CA 91302-1613
Borrower owes Lender the principal sum of
ONE HUNDRED FIFTY FIVE THOUSAND THREE HUNDRED TWO and 00/100

IMP FD SURE $   20.00
RECORDING FEE       20.00
TOTAL              40.00
Rcpt PG03   Rcpt $ 47833
Tby as nominee for  2962
fee per page laws of 09:36 a

Dollars (U.S. $ 155,302.00      ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on NOVEMBER 01, 2033    . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,
Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property
located in PRINCE GEORGE'S                      County, Maryland:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

FHA Maryland Deed of Trust with MERS - 4/96

Page 1 of 6

Initials: GJC

VMP -4N(MD) (9802).04   CHL (04/01)(d)   VMP MORTGAGE FORMS - (800)521-7291

Amended 2/98

which has the address of          14218 OXFORD DRIVE, LAUREL

[Street, City]

Maryland    20707    ("Property Address");

[Zip Code]

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

      BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

      Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

      **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

      **2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

      Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

      If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

      The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

      **3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

      First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

      Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

      Third, to interest due under the Note;

      Fourth, to amortization of the principal of the Note; and

      Fifth, to late charges due under the Note.

      **4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

Initials: _CATC_

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

Initials: GJC   JLC

18486  286

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Initials:

18486   287

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of   5.000 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**Borrower, in accordance with Subtitle W of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph 18 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument without charge to Borrower and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph 18 of this Security Instrument.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[ Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider | ☐ Other [specify] |
| ☒ Planned Unit Development Rider | ☐ Graduated Payment Rider | |

Initials: GcfC



LEGAL DESCRIPTION – EXHIBIT A

BEING KNOWN AND DESIGNATED IN THE SUBDIVISION KNOWN AS "PLAT 1-SECTION 2, LAUREL LAKES" AS PER PLAT OF SAID SUBDIVISION RECORDED IN PLAT BOOK NLP 123 AT PLAT 1, AMONG THE LAND RECORDS OF PRINCE GEORGE'S COUNTY, MARYLAND.

18486   289

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
GREGORY J. CASAMENTO                            -Borrower

_____ (Seal)
JENNIFER LEE CASAMENTO                          -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)
                                                -Borrower

STATE OF MARYLAND,                              County ss: Anne
    I Hereby Certify, That on this _24th_ day of _October, 2003_, before me, the subscriber, _Andel_ a Notary Public of the State of Maryland, in and for the _Aforesaid Cnty._ personally appeared

_Gregory J Casamento, Jennifer Lee Casamento_

known to me or satisfactorily proven to be the person(s) whose name(s) subscribed to the within instrument and acknowledge that _they_ executed the same for the purposes therein contained.
    AS WITNESS: my hand and notarial seal.

My Commission Expires: _10·10·06_

Notary Public

STATE OF _Maryland_                             County ss: Anne
    I Hereby Certify, That on this _24th_ day of _October 2003_, before me, the Andel subscriber, a Notary Public of the State of _Maryland_ and for the _Aforesaid Cnty._ personally appeared

_Karen Daley_

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust who also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.
    AS WITNESS: my hand and notarial seal.

My Commission Expires: _10·10·00_

Notary Public

This is to certify that the within instrument was prepared
by a party to the instrument.

_____
JULIE L. BERENS
Loan Processor

18486   290

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
JULIE L. BERENS



FHA Multistate PUD Rider - 10/95

-589U (9705).03 **CHL (03/01)(d)**  VMP MORTGAGE FORMS - (800)521-7291       Initials

18486   291

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 24th day of OCTOBER, 2003 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note
("Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
14218 OXFORD DRIVE
LAUREL, MD 20707
[Property Address]
The Property Address is a part of a planned unit development ("PUD") known as
LAUREL LAKES

[Name of Planned Unit Development]
**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower
and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and
facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all
improvements now existing or hereafter erected on the mortgaged premises, and such policy is
satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and
against the hazards Lender requires, including fire and other hazards included within the term
"extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender
waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to
Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property,
and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard
insurance coverage on the Property is deemed satisfied to the extent that the required coverage is
provided by the Owners Association policy. Borrower shall give Lender prompt notice of any
lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event
of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to
the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are
hereby assigned and shall be paid to Lender for application to the sums secured by this Security
Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments
creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any
amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower
secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment,

-589U (9705).03   **CHL (03/01)**   Page 2 of 3   Initials: _GJC_

CASE #: MD2494857268703              DOC ID #: 0003223942610003

these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
GREGORY J. CASAMENTO                                    -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

VMP®-589U (9705).03  CHL (03/01)              Page 3 of 3

32990 058

Recording Requested By:
**Bank of America**
Prepared By: Kathy Oriard
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address:
**14218 Oxford Dr**
**Laurel, MD 20707-5852**

Clerk of the
Circuit Court
PR GEO CO FILED #71
2011 SEP 30 AM 11:11

This space for Recorder's use

MERS Phone #:   888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A.**, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA **COUNTRYWIDE HOME  LOANS SERVICING, LP** whose address is 400 NATIONAL WAY, SIMI VALLEY, CA 93065
 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          **COUNTRYWIDE HOME LOANS, INC.**
Made By:             **GREGORY J. CASAMENTO, A MARRIED MAN**
Original Trustee:       **R. DOUGLAS JONES**
Date of Deed of Trust: 10/24/2003      Original Loan Amount: **$155,302.00**

Recorded in Prince Georges County, MD on: 12/8/2003, book 18486, page 283 and instrument number N/A

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
9/21/11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____
Beverly Brooks, Assistant Secretary

IMP FD SURE $          40.00
RECORDING FEE          20.00
TOTAL                  .60.00
Rcpt# P5025   Rcpt # 33549
MHD     NNR   Blk # 6330
Sep 30, 2011        11:19 am

State of California
County of Ventura

On 9/21/2011 _____ before me, _____ Jovida AlvarezDiaz _____, Notary Public, personally
appeared Beverly Brooks
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____ Jovida AlvarezDiaz _____                     (Seal)
My Commission Expires: 1-20-2014

JOVIDA ALVAREZ DIAZ
Commission # 1877678
Notary Public - California
Los Angeles County
My Comm. Expires Jan 20, 2014

**Page 31 of 31**
GPIN/TAX MAP ID Number: 10-1038728
Prepared by and return to:  Samuel I. White, P.C., 5040 Corporate Woods Drive, Suite 120, Virginia Beach, VA 23462



**After Recording Return To:**

Bank of America, N.A.

1001 Liberty Avenue, Suite 675

Pittsburgh, PA  15222

This document was prepared by Bank of America, N.A.

_____ [Space Above This Line for Recordering Data] _____

# FEDERAL HOUSING ADMINISTRATION
# LOAN MODIFICATION AGREEMENT

**Borrower ("I"): GREGORY J CASAMENTO**

**Lender or Servicer ("Lender"): Bank of America, N.A.**

**Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): October 24, 2003**

**Property Address *(See Exhibit A for Legal Description, if and when recording becomes necessary)* ("Property"): 14218 OXFORD DRIVE, LAUREL, MD 20707**

**Important Disclosures:** The Federal Housing Administration (FHA) requires that Lender provide you with information designed to help you understand the modified mortgage terms that are being offered to you. Lender is required to provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage in a timely manner to enable Borrower to make informed decisions. This information is included below.  Please read it carefully.

If my representations in Section 1 below continue to be true in all material respects, then this Federal Housing Administration (FHA) Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents. If there is more than one borrower or mortgagor executing this document, each is referred to as "I." Words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

1.  **My Representations.** I certify, represent to Lender, and agree as follows:

    A.  The Property has no more than four units.

    B.  The Property currently has no materially adverse physical condition(s).

    C.  I intend to continue to live in the Property as my primary residence.

    D.  I do not have any other FHA-insured mortgage.

    E.  I am in default under the Loan Documents. My default under the Loan Documents resulted from my verifiable (1) loss of income or (2) increase in living expenses.

    F.  I currently have sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.

    G.  I have provided documentation for **all** income that I receive (although I am not required to disclose child support or alimony, unless I chose to rely on such income when requesting to a loan modification).

    H.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement are true and correct.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  Prior to the Modification Effective Date as set forth in Section 3 below, if Lender determines that any of my representations in Section 1 above are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided by the Loan Documents.

    B.  The Loan Documents will not be modified unless and until (1) Lender approves this Agreement and (2) the Modification Effective Date (as defined in Section 3 below) has occurred. In addition, Lender will not be obligated to modify the Loan Documents if I fail to meet any of the requirements under this Agreement.

3. **The Modification.** If all of my representations in Section 1 above continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on May 1, 2013.

    A. The new Maturity Date will be February 1, 2043.

    B. The modified principal balance of my Note may include amounts and arrearages (including unpaid and deferred interest, foreclosure legal fees and costs, escrow items, and other costs, but excluding unpaid late charges and administrative fees, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new principal balance of my Note will be $146,840.66 (the "New Principal Balance"). By agreeing to add Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. This means that interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C. Interest at the fixed rate of 4.000% will begin to accrue on the New Principal Balance as of February 1, 2013 and my first new monthly payment on the New Principal Balance will be due on May 1, 2013. My fully amortizing payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|
| 30 | 4.000% | $701.04 | $396.95, may adjust periodically | $1,097.99, may adjust periodically | 05/01/2013 | 360 |

    *The escrow payments may be adjusted periodically in accordance with applicable law. Therefore, my total monthly payment may change accordingly.

    The terms in this Section 3.C. supersede any provisions to the contrary in the Loan Documents, including (but not limited to) provisions for an adjustable- or step-interest rate.

    D. I will be in Default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E. The interest rate set forth in Section 3.C. above shall apply even in the event of default and if the Loan Documents permitted a default rate of interest.

4. **Additional Agreements.** Lender and I agree to the following:

A.  I authorize Lender to attach an Exhibit A to this loan modification, which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

B.  All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing.   This Agreement may be executed in separate counterparts, each of which shall be deemed an original.

C.  This Agreement supersedes the terms of any modification, forbearance, trial modification payment plan, or loan workout plan that I previously entered into with Lender.

D.  I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may periodically change over the term of my Loan.

E.  The Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.  Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice to, or demand on, me.

H.   On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only as permitted under FHA guidelines. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

J.   I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.   I will execute such other documents as may be reasonably necessary either to (1) consummate the terms and conditions of this Agreement or (2) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  Lender may declare this Agreement void and of no legal effect upon notice of such error.  If I sign a corrected Agreement, Lender will provide a copy of such Agreement to me.  If I elect not to sign such corrected Agreement, at Lender's sole option, (x) the terms of the original Loan Documents shall continue in full force and effect and (y) the terms of the original Loan Documents will not be modified by this Agreement.

L.   Lender may collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosure all of this information and the terms of this Agreement by Lender to (1) any government entity that regulates Lender; (2) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first-lien or subordinate lien (if applicable) mortgage loan(s); (3) companies that perform support services for the FHA; and (4) any HUD-certified housing counseling agency.

M.   If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary.  If the original promissory note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the original note.  All documents that Lender requests of me under this Section  shall be referred to as the "Documents."  I will deliver the Documents within ten days after I receive Lender's written request for such replacement.

N.  The mortgage insurance premiums, if any, on my loan may increase as a result of the capitalization.  An increase in my mortgage insurance premiums will increase my monthly mortgage payment.  Furthermore, the date on which I may request cancelation of mortgage insurance may change as a result of the higher unpaid principal balance.

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no
photocopies accepted)

_____
GREGORY J CASAMENTO
(Must Be Signed Exactly As Printed)

____4/6/2013_____
Date

_____[Space below this line for Acknowledgement]_____

STATE OF _MARYLAND_____

COUNTY OF _PRINCE GEORGE's_____

On _6th_ day of _APRIL___ in the year _2013_ before me, _JEFFREY ALEXANDER___
Notary Public, personally appeared <u>GREGORY J CASAMENTO</u> personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which
the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____Notary Signature

_JEFFREY ALEXANDER_____Notary Public Printed Name Please Seal Here

_8/3/13_____Notary Public Commission Expiration Date

```
JEFFREY D. ALEXANDER
Notary Public
Prince George's County
Maryland
My Commission Expires Aug. 3, 2013
```

**DO NOT WRITE BELOW THIS LINE.**
*************************************************************************************
THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
     By: Urban Settlement Services, LLC, its attorney in fact

By: _____    Dated: _____

Name:
Title :

_____[Space below this line for Acknowledgement]_____

STATE OF _____
COUNTY OF _____

On ____ day of _____ in the year _____ before me, _____
Notary Public, personally appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____Notary Signature

_____Notary Public Printed Name Please Seal Here

_____Notary Public Commission Expiration Date

Signatures continue on the following page

Mortgage Electronic Registration Systems, Inc. -
Nominee for Bank of America, N.A.

By: _____        _____
                                    Date

_____
Printed Name and Title

_____[Space below this line for Acknowledgement]_____

STATE OF _____

COUNTY OF _____

On ____ day of _____ in the year _____ before me, _____
Notary Public, personally appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____Notary Signature

_____Notary Public Printed Name Please Seal Here

_____Notary Public Commission Expiration Date

Real Property Data Search ( )

Search Result for PRINCE GEORGE'S COUNTY

| View Map | View GroundRent Redemption | View GroundRent Registration |
|---|---|---|

Special Tax Recapture: None

**Account Identifier:** District - 10 Account Number - 1038728

## Owner Information

| | | | |
|---|---|---|---|
| Owner Name: | CASAMENTO GREGORY J & JENNIFER L | Use: | TOWN HOUSE |
| | | Principal Residence: | YES |
| Mailing Address: | 14218 OXFORD DR | Deed Reference: | /00000/ 00000 |
| | LAUREL MD 20707-5852 | | |

## Location & Structure Information

| | | | |
|---|---|---|---|
| Premises Address: | 14218 OXFORD DR | Legal Description: | L6228 F205 |
| | LAUREL 20707-0000 | | |

| Map: | Grid: | Parcel: | Neighborhood: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: | 123001 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0006 | 00A4 | 0000 | 10044683.17 | 4683 | 02 | | 180 | 2020 | Plat Ref: | |

**Town:** LAUREL

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1987 | 1,664 SF | | 2,670 SF | 011 |

| Stories | Basement | Type | Exterior | Quality | Full/Half Bath | Garage | Last Notice of Major Improvements |
|---|---|---|---|---|---|---|---|
| 2 | YES | END UNIT | FRAME/ | 3 | 2 full/ 1 half | 1 Attached | |

## Value Information

| | Base Value | Value | Phase-in Assessments | |
|---|---|---|---|---|
| | | As of 01/01/2020 | As of 07/01/2021 | As of 07/01/2022 |
| Land: | 100,000 | 75,000 | | |
| Improvements | 179,300 | 205,100 | | |
| Total: | 279,300 | 280,100 | 279,833 | 280,100 |
| Preferential Land: | 0 | 0 | | |

## Transfer Information

| | | |
|---|---|---|
| **Seller:** CASAMENTO,GREGORY J & JENNIFER | **Date:** 06/09/2005 | **Price:** $0 |
| **Type:** NON-ARMS LENGTH OTHER | **Deed1:** /00000/ 00000 | **Deed2:** |
| **Seller:** REGEN,SYDNEY & EILEEN F | **Date:** 09/14/2000 | **Price:** $0 |
| **Type:** NON-ARMS LENGTH OTHER | **Deed1:** /14053/ 00150 | **Deed2:** |
| **Seller:** SOMMERS,NATHAN A & | **Date:** 05/08/1991 | **Price:** $153,029 |
| **Type:** ARMS LENGTH IMPROVED | **Deed1:** /07941/ 00670 | **Deed2:** |

## Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2021 | 07/01/2022 |
|---|---|---|---|
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00|0.00 | 0.00|0.00 |

Special Tax Recapture: None

## Homestead Application Information

**Homestead Application Status:** No Application

## Homeowners' Tax Credit Application Information

**Homeowners' Tax Credit Application Status:** No Application          **Date:**